CV 15                    2865

ORIGINAL

SLR:LDM/TH:CSK
V#: 2015V00190

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA,

          Plaintiff,

        -against-

EIGHTY-TWO THOUSAND, EIGHT HUNDRED
THIRTY-NINE DOLLARS AND SEVENTY-TWO
CENTS, MORE OR LESS, IN U.S. CURRENCY,
($82,839.72), SEIZED ON OR ABOUT MARCH
23, 2015, FROM CHASE ACCOUNT NO.
979485851 HELD IN THE NAME OF OR FOR
THE BENEFIT OF NYC PODIATRY, P.C. AND
ALL PROCEEDS TRACEABLE THERETO;

TWO HUNDRED SIXTY-TWO THOUSAND,
THREE HUNDRED SEVENTY-NINE DOLLARS
AND TWENTY-EIGHT CENTS, MORE OR
LESS, IN U.S. CURRENCY, ($262,379.28),
SEIZED ON OR ABOUT MARCH 23, 2015
FROM CHASE ACCOUNT No. 829284090 HELD
IN THE NAME OF OR FOR THE BENEFIT OF
THE CENTER FOR SURGERY (d/b/a NEW
YORK VEIN CENTER), LLC AND ALL
PROCEEDS TRACEABLE THERTO;

FOUR HUNDRED TWENTY-THREE
THOUSAND NINE HUNDRED THIRTY
DOLLARS AND SIXTY-FIVE CENTS, MORE
OR LESS, IN U.S. CURRENCY ($423,930.65),
SEIZED ON OR ABOUT MARCH 23, 2015
FROM CAPITAL ONE ACCOUNT NOS.
7064001741 HELD IN THE NAME OF OR FOR
THE BENEFIT OF TW CAPITAL CORP. (d/b/a
WEST 5TH MEDICAL SUPPLY) AND ALL
PROCEEDS TRACEABLE THERETO;

**VERIFIED COMPLAINT
IN REM**

Civil Action No.

CV 15-  VITALIANO, J.

LEVY, M.J.



ORIGINAL

SEVENTY THOUSAND FIVE HUNDRED
NINETY-NINE DOLLARS AND SEVEN CENTS,
MORE OR LESS, IN U.S. CURRENCY
($70,599.07), SEIZED ON OR ABOUT MARCH
23, 2015 FROM CHASE ACCOUNT
NO.528372563 HELD IN THE NAME OF OR
FOR THE BENEFIT OF COMMUNITY
MEDICAL DISORDER, P.C. AND ALL
PROCEEDS TRACEABLE THERETO;

SIXTY-SIX THOUSAND FOUR HUNDRED
TWENTY-NINE DOLLARS AND THIRTY-NINE
CENTS, MORE OR LESS, IN U.S. CURRENCY,
($66,429.39), SEIZED ON OR ABOUT MARCH
23, 2015, FROM CHASE BANK ACCOUNT NO.
477067156 HELD IN THE NAME OF OR FOR
THE BENEFIT OF TREATING PHYSICIAN
MEDICAL CARE, P.C. AND ALL PROCEEDS
TRACEABLE THERETO;

THREE HUNDRED FORTY-FOUR THOUSAND
SIX HUNDRED NINETY-ONE DOLLARS AND
TEN CENTS, MORE OR LESS, IN U.S.
CURRENCY ($344,691.10), SEIZED ON OR
ABOUT MARCH 23, 2015, FROM TD BANK
ACCOUNT NO. 4309141200 HELD IN THE
NAME OF OR FOR THE BENEFIT OF HYLAN
BOULEVARD PHYSICAL MEDICINE AND
REHABILITATION, PLLC AND ALL
PROCEEDS TRACEABLE THERETO;

FIVE HUNDRED SEVENTY-SEVEN
THOUSAND FIVE HUNDRED SEVENTY-NINE
DOLLARS AND SIXTEEN CENTS, MORE OR
LESS, IN U.S. CURRENCY, ($577,579.16),
SEIZED ON OR ABOUT MARCH 23, 2015,
FROM CHASE ACCOUNT NO. 830992053
HELD IN THE NAME OF OR FOR THE
BENEFIT OF NED MANAGEMENT CORP. AND
ALL PROCEEDS TRACEABLE THERETO;

SEVENTY-EIGHT THOUSAND FOUR
HUNDRED TWENTY-FIVE DOLLARS AND
FORTY-EIGHT CENTS, MORE OR LESS, IN

2

U.S. CURRENCY ($78,425.48), SEIZED OR OR
ABOUT MARCH 23, 2015 FROM CHASE
ACCOUNT NO. 831035654 HELD IN THE
NAME OF OR FOR THE BENEFIT OF ASSIST
MEDICAL SUPPLIES, CORP. AND ALL
PROCEEDS TRACEABLE THERETO;

THREE HUNDRED SEVENTY-FIVE
THOUSAND ONE HUNDRED SEVENTY-
SEVEN DOLLARS AND FIFTY-NINE CENTS,
MORE OR LESS, IN U.S. CURRENCY,
($375,177.59), SEIZED ON OR ABOUT MARCH
23, 2015 FROM CHASE BANK ACCOUNT NO.
2921056749 AND TWO HUNDRED FORTY
THOUSAND DOLLARS, MORE OR LESS, IN
U.S. CURRENCY, ($240,000), SEIZED ON OR
ABOUT MARCH 23, 2015 FROM CHASE BANK
ACCOUNT NO.  829284074 BOTH HELD IN
THE NAME OF OR FOR THE BENEFIT OF
DAVID M. GLASS AND ALL PROCEEDS
TRACEABLE THERETO;

TWENTY-SIX THOUSAND ONE HUNDRED
THIRTY-NINE DOLLARS AND NINETY-
THREE CENTS, MORE OR LESS, IN U.S.
CURRENCY, ($26,139.93), SEIZED ON OR
ABOUT MARCH 23, 2015 FROM CAPITAL
ONE ACCOUNT NO. 6646002953 AND
SEVENTY-NINE THOUSAND THREE
HUNDRED SIXTY-TWO DOLLARS AND
NINETY-SIX CENTS, MORE OR LESS, IN U.S.
CURRENCY, ($79,362.96), SEIZED ON OR
ABOUT MARCH 23, 2015 FROM CAPITAL
ONE ACCOUNT NO. 7058093038 BOTH HELD
IN THE NAME OF OR FOR THE BENEFIT OF
POLINA VAINER AND ALL PROCEEDS
TRACEABLE THERETO;

THIRTY THOUSAND SIX HUNDRED FIFTY
DOLLARS AND SEVENTY-SIX CENTS, MORE
OR LESS, IN U.S. CURRENCY ($30,650.76),
SEIZED ON OR ABOUT MARCH 23, 2015
FROM CAPITAL ONE ACCOUNT NO.
7014669072 HELD IN THE NAME OF OR FOR
THE BENEFIT OF ERIC VAINER AND ALL

PROCEEDS TRACEABLE THERETO;

FOUR HUNDRED TWENTY-EIGHT
THOUSAND, THREE HUNDRED NINETY-
NINE DOLLARS AND EIGHTY-SIX CENTS,
MORE OR LESS, IN U.S. CURRENCY,
($428,399.86), SEIZED ON OR ABOUT APRIL 1,
2015, FROM TD BANK ACCOUNT NO.
4270189850 HELD IN THE NAME OF OR FOR
THE BENEFIT OF HENRY SARDAR AND ALL
PROCEEDS TRACEABLE THERETO;

REAL PROPERTY AND PREMISES KNOWN AS
2376 EAST 4TH STREET, BROOKLYN, NEW
YORK, DESIGNATED ON THE KINGS
COUNTY, NEW YORK TAX MAP AS BLOCK
7179, LOT 24, TITLE TO WHICH IS HELD IN
THE NAME OF HENRY SADAR, AND ANY
AND ALL PROCEEDS TRACEABLE THERETO;

REAL PROPERTY AND PREMISES KNOWN AS
2394 EAST 5TH STREET, BROOKLYN, NEW
YORK, DESIGNATED ON THE KINGS
COUNTY, NEW YORK TAX MAP AS BLOCK
7180, LOT 28, TITLE TO WHICH IS HELD IN
THE NAME OF HENRY SARDAR, AND ANY
AND ALL PROCEEDS TRACEABLE THERETO;
and

REAL PROPERTY AND PREMISES KNOWN AS
1995 EAST 7TH STREET, BROOKLYN, NEW
YORK, DESIGNATED ON THE KINGS
COUNTY, NEW YORK TAX MAP AS BLOCK
7089, LOT 79, TITLE TO WHICH IS HELD IN
THE NAME OF HENRY SARDAR AND ALICE
SARDAR, HUSBAND AND WIFE, AND ANY
AND ALL PROCEEDS TRACEABLE THERETO,

Defendants in rem.

- - - - - - - - - - - - - - - - - - - - -X

Plaintiff, the United States of America, by its attorney, Kelly T. Currie, Acting

United States Attorney for the Eastern District of New York, Claire S. Kedeshian, Assistant

United States Attorney, of Counsel, alleges upon information and belief as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action in rem to forfeit and condemn to the use and

benefit of the United States of America the above-captioned funds and properties  pursuant to

18 U.S.C. § 981(a)(1)(A), as property involved in money laundering transactions in violation

of 18 U.S.C. §§ 1956 or 1957, and pursuant to 18 U.S.C. § 981(a)(1)(C), as property which

constitutes or is derived from proceeds traceable to a federal health care fraud scheme in

violation of 18 U.S.C. § 1347.

## THE DEFENDANTS IN REM

2.      The Defendants in Rem are:

EIGHTY-TWO THOUSAND, EIGHT HUNDRED THIRTY-NINE DOLLARS AND
SEVENTY-TWO CENTS, MORE OR LESS, IN U.S. CURRENCY, ($82,839.72),
SEIZED ON OR ABOUT MARCH 23, 2015, FROM CHASE ACCOUNT NO.
979485851 HELD IN THE NAME OF OR FOR THE BENEFIT OF NYC
PODIATRY, P.C. AND ALL PROCEEDS TRACEABLE THERETO ("Subject
Account # 1");

TWO HUNDRED SIXTY-TWO THOUSAND, THREE HUNDRED SEVENTY-
NINE DOLLARS AND TWENTY-EIGHT CENTS, MORE OR LESS, IN U.S.
CURRENCY, ($262,379.28), SEIZED ON OR ABOUT MARCH 23, 2015 FROM
CHASE ACCOUNT No. 829284090 HELD IN THE NAME OF OR FOR THE
BENEFIT OF THE CENTER FOR SURGERY (d/b/a NEW YORK VEIN CENTER),
LLC AND ALL PROCEEDS TRACEABLE THERTO ("Subject Account # 2");

FOUR HUNDRED TWENTY-THREE THOUSAND NINE HUNDRED THIRTY
DOLLARS AND SIXTY-FIVE CENTS, MORE OR LESS, IN U.S. CURRENCY
($423,930.65), SEIZED ON OR ABOUT MARCH 23, 2015 FROM CAPITAL ONE
ACCOUNT NOS. 7064001741 HELD IN THE NAME OF OR FOR THE BENEFIT
OF TW CAPITAL CORP. (d/b/a WEST 5TH MEDICAL SUPPLY) AND ALL
PROCEEDS TRACEABLE THERETO ("Subject Account # 3");

SEVENTY THOUSAND FIVE HUNDRED NINETY-NINE DOLLARS AND SEVEN CENTS, MORE OR LESS, IN U.S. CURRENCY ($70,599.07), SEIZED ON OR ABOUT MARCH 23, 2015 FROM CHASE ACCOUNT NO.528372563 HELD IN THE NAME OF OR FOR THE BENEFIT OF COMMUNITY MEDICAL DISORDER, P.C. AND ALL PROCEEDS TRACEABLE THERETO ("Subject Account # 4");

SIXTY-SIX THOUSAND FOUR HUNDRED TWENTY-NINE DOLLARS AND THIRTY-NINE CENTS, MORE OR LESS, IN U.S. CURRENCY, ($66,429.39), SEIZED ON OR ABOUT MARCH 23, 2015, FROM CHASE BANK ACCOUNT NO. 477067156 HELD IN THE NAME OF OR FOR THE BENEFIT OF TREATING PHYSICIAN MEDICAL CARE, P.C. AND ALL PROCEEDS TRACEABLE THERETO "(Subject Account # 5");

THREE HUNDRED FORTY-FOUR THOUSAND SIX HUNDRED NINETY-ONE DOLLARS AND TEN CENTS, MORE OR LESS, IN U.S. CURRENCY ($344,691.10), SEIZED ON OR ABOUT MARCH 23, 2015, FROM TD BANK ACCOUNT NO. 4309141200 HELD IN THE NAME OF OR FOR THE BENEFIT OF HYLAN BOULEVARD PHYSICAL MEDICINE AND REHABILITATION, PLLC AND ALL PROCEEDS TRACEABLE THERETO ("Subject Account #6");

FIVE HUNDRED SEVENTY-SEVEN THOUSAND FIVE HUNDRED SEVENTY-NINE DOLLARS AND SIXTEEN CENTS, MORE OR LESS, IN U.S. CURRENCY, ($577,579.16), SEIZED ON OR ABOUT MARCH 23, 2015, FROM CHASE ACCOUNT NO. 830992053 HELD IN THE NAME OF OR FOR THE BENEFIT OF NED MANAGEMENT CORP. AND ALL PROCEEDS TRACEABLE THERETO ("Subject Account # 7");

SEVENTY-EIGHT THOUSAND FOUR HUNDRED TWENTY-FIVE DOLLARS AND FORTY-EIGHT CENTS, MORE OR LESS, IN U.S. CURRENCY ($78,425.48), SEIZED OR OR ABOUT MARCH 23, 2015 FROM CHASE ACCOUNT NO. 831035654 HELD IN THE NAME OF OR FOR THE BENEFIT OF ASSIST MEDICAL SUPPLIES, CORP. AND ALL PROCEEDS TRACEABLE THERETO ("Subject Account # 8");

THREE HUNDRED SEVENTY-FIVE THOUSAND ONE HUNDRED SEVENTY-SEVEN DOLLARS AND FIFTY-NINE CENTS, MORE OR LESS, IN U.S. CURRENCY, ($375,177.59), SEIZED ON OR ABOUT MARCH 23, 2015 FROM CHASE BANK ACCOUNT NO. 2921056749 AND TWO HUNDRED FORTY THOUSAND DOLLARS, MORE OR LESS, IN U.S. CURRENCY, ($240,000), SEIZED ON OR ABOUT MARCH 23, 2015 FROM CHASE BANK ACCOUNT NO. 829284074 BOTH HELD IN THE NAME OF OR FOR THE BENEFIT OF DAVID M. GLASS AND ALL PROCEEDS TRACEABLE THERETO ("Subject Accounts # 9A and # 9B");

6

TWENTY-SIX THOUSAND ONE HUNDRED THIRTY-NINE DOLLARS AND NINETY-THREE CENTS, MORE OR LESS, IN U.S. CURRENCY, ($26,139.93), SEIZED ON OR ABOUT MARCH 23, 2015 FROM CAPITAL ONE ACCOUNT NO. 6646002953 AND SEVENTY-NINE THOUSAND THREE HUNDRED SIXTY-TWO DOLLARS AND NINETY-SIX CENTS, MORE OR LESS, IN U.S. CURRENCY, ($79,362.96), SEIZED ON OR ABOUT MARCH 23, 2015 FROM CAPITAL ONE ACCOUNT NO. 7058093038 BOTH HELD IN THE NAME OF OR FOR THE BENEFIT OF POLINA VAINER AND ALL PROCEEDS TRACEABLE THERETO ("Subject Accounts # 10A and # 10B);

THIRTY THOUSAND SIX HUNDRED FIFTY DOLLARS AND SEVENTY-SIX CENTS, MORE OR LESS, IN U.S. CURRENCY ($30,650.76), SEIZED ON OR ABOUT MARCH 23, 2015 FROM CAPITAL ONE ACCOUNT NO. 7014669072 HELD IN THE NAME OF OR FOR THE BENEFIT OF ERIC VAINER AND ALL PROCEEDS TRACEABLE THERETO ("Subject Account # 11");

FOUR HUNDRED TWENTY-EIGHT THOUSAND, THREE HUNDRED NINETY-NINE DOLLARS AND EIGHTY-SIX CENTS, MORE OR LESS, IN U.S. CURRENCY, ($428,399.86), SEIZED ON OR ABOUT APRIL 1, 2015, FROM TD BANK ACCOUNT NO. 4270189850 HELD IN THE NAME OF OR FOR THE BENEFIT OF HENRY SARDAR AND ALL PROCEEDS TRACEABLE THERETO ("Subject Account # 12");

REAL PROPERTY AND PREMISES KNOWN AS 2376 EAST 4TH STREET, BROOKLYN, NEW YORK, DESIGNATED ON THE KINGS COUNTY, NEW YORK TAX MAP AS BLOCK 7179, LOT 24, TITLE TO WHICH IS HELD IN THE NAME OF HENRY SADAR, AND ANY AND ALL PROCEEDS TRACEABLE THERETO ("SUBJECT PROPERTY # 1");

REAL PROPERTY AND PREMISES KNOWN AS 2394 EAST 5TH STREET, BROOKLYN, NEW YORK, DESIGNATED ON THE KINGS COUNTY, NEW YORK TAX MAP AS BLOCK 7180, LOT 28, TITLE TO WHICH IS HELD IN THE NAME OF HENRY SARDAR, AND ANY AND ALL PROCEEDS TRACEABLE THERETO ("SUBJECT PROPERTY # 2"); AND

REAL PROPERTY AND PREMISES KNOWN AS 1995 EAST 7TH STREET, BROOKLYN, NEW YORK, DESIGNATED ON THE KINGS COUNTY, NEW YORK TAX MAP AS BLOCK 7089, LOT 79, TITLE TO WHICH IS HELD IN THE NAME OF HENRY SARDAR AND ALICE SARDAR, HUSBAND AND WIFE, AND ANY AND ALL PROCEEDS TRACEABLE THERETO ("SUBJECT PROPERTY # 3"),

(collectively "The Defendants in rem").

7

## JURISDICTION AND VENUE

3.      This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.      Venue lies in the Eastern District of New York pursuant to 28 U.S.C. §§ 1355 and 1395.

## STATUTORY FRAMEWORK

### A.  THE MEDICARE AND MEDICAID PROGRAMS

5.      The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of 65 or disabled. Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries." Medicare has a standard benefit package that covers medically necessary care that beneficiaries can receive from nearly any hospital or doctor in the country who participates in the Medicare program. "Participating" providers take "assignment," meaning that they accept Medicare's approved rate for their services as payment in full.

6.      The New York State Medicaid program ("Medicaid") is a federal and state health care program providing benefits to individuals and families who meet specified financial and other eligibility requirements, and certain other individuals who lack adequate resources to pay for medical service. In general, Medicaid providers bill Medicaid for medically necessary goods and services that were provided to Medicaid beneficiaries.

8

Billings are required to follow Medicaid protocols, standards and schedules and are required

to describe the medical diagnoses and treatments provided.  In traditional Medicaid fee-for-

service, the provider directly bills and is paid by Medicaid.  Upon receipt of providers' bills,

Medicaid has the ability to review the bills for facial validity; generally, Medicaid relies on

the honesty of providers and beneficiaries.

7.      Medicaid managed care, which is a variation of Medicaid, rather than

paying providers directly as in the fee-for-service model, shifts the direct costs of the

beneficiary's medical care to a managed care organization (also called a health maintenance

organization ("HMO").  With this model, Medicaid pays only for the beneficiary's health

insurance premiums; the medical provider is billed and paid by the managed care

organization.  Bills sent by providers to Medicaid managed care organizations and to other

health insurance plans, including Medicare, generally follow similar procedures followed by

the Medicaid program.

8.      In New York State, the New York State Department of Health ("DOH")

exercises overall supervision and management of the Medicaid program.  DOH is also

responsible for supervising the State's local social and human services agencies, including

the New York City Human Resources Administration ("HRA"), which participates in

administering Medicaid.

9.      Medical providers who choose to enroll in Medicaid have to follow

requirements issued by DOH and Medicaid, in addition to federal law.  In particular, the

Medicaid Provider Manual and its updates detail providers' duties and responsibilities, the

rules governing the provision of care to Medicaid beneficiaries, and billing instructions,

procedure codes, and fee schedules.  To bill and receive payments from Medicaid, a provider

9

is required to complete a detailed application process and is required to specifically agree to comply with the rules, regulations and official directives of the Medicaid program. Providers file regular certifications acknowledging that the provider has read the Medicaid Provider Manual and has fully complied with Medicaid's rules and regulations. Providers are required to specifically attest that "all statements made hereon are true, accurate and complete to the best of my knowledge" and that "no material fact has been omitted."

10.     Among the practices prohibited by Medicaid and Medicare are false statements and false claims, including claims for medically unnecessary care or undelivered care. Additionally, bribes and kickbacks, in cash or in kind, by medical providers to beneficiaries are explicitly prohibited by the New York State Social Services Law. It is also professional misconduct for any health care professional to engage in this behavior.

11.     Medicare and Medicaid are each health care benefit programs as defined by Title 18, United States Code, Section 24(b).

12.     The Medicare program is subdivided into four different parts (A, B, C and D). As particularly relevant to this investigation, Medicare Part B covers certain non-hospital medical expenses like doctors' office visits, blood tests, x-rays, diabetic screening and supplies, and outpatient hospital care administered in a doctor's office. Part B benefits also covers durable medical equipment ("DME"), including orthotics, splints, canes, walkers, wheelchairs, and mobility scooters for those with mobility impairments. Generally, Medicare Part B covers these costs, if among other requirements, they were medically necessary and ordered by a physician. Medicare Part C, also known as a Medicare Advantage Plan, is a type of Medicare health plan offered by private insurance companies that contract with Medicare to provide Part B benefits. Medicare pays those companies a set

amount each month.  Medicare Advantage Plans include HMOs, Preferred Provider
Organizations, Private Fee-for-Service Plans, Special Needs Plans, and Medicare Medical
Savings Account Plans.

### B. THE RELEVANT FEDERAL STATUTES

13.     Title 18, United States Code, Section 981(a)(1)(C) provides for the
forfeiture of any property, real or personal, which constitutes or is derived from proceeds
traceable to any offense, or a conspiracy to commit such an offense, which constitutes
"specified unlawful activity," as defined in Title 18, United States Code, Section 1956(c)(7).

14.     Pursuant to Title 18, United States Codes, Section 1956(c)(7)(F), the
term "specified unlawful activity" includes any act or activity constituting an offense
involving a Federal health care offense.

15.     Title 18, United States Code, Section 1956 (c)(9) defines "proceeds" as
"any property derived from or obtained or retained, directly or indirectly, through some form
of unlawful activity, including, the gross receipts of such activity."

16.     Title 18, United States Code, Section 1347, prohibits any person from
defrauding any health care benefit program or obtaining, by means of false or fraudulent
pretenses, representations, or promises, any money or property owned by, or under the
custody or control of, any health care benefit program.

17.     Further, Title 18, United States Code, Section 981(a)(1)(A), provides
for the forfeiture of any property, real or personal, involved in a transaction or attempted
transaction in violation of sections 1956 or 1957, or any property traceable to such property.

11

18.     Title 18, United States Code, Section 1956(a)(1)(A)(i) prohibits financial transactions which involve the proceeds of specified unlawful activity, to wit: a federal health care offense (18 U.S.C. § 1956(c)(7)(F)), with the intent to promote the carrying on of the specified unlawful activity.

19.     Title 18, United States Code, Section 1956 (a)(1)(B)(i) prohibits financial transactions designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, to wit, a federal health care fraud offense.

20.     Title 18, United States Code, Section 1956(h) prohibits conspiring to commit a violation of Sections 1956 and/or 1957.

21.     Title 18, United States Code, Section 1957 prohibits monetary transactions in amounts of $10,000 or more in criminally derived property and that is derived from specified unlawful activity.

22.     Pursuant to Title 18, United States Code, Section 984, in any forfeiture action in which the subject property constitutes funds deposited into a bank account, the government is not required to identify the particular funds involved in the offense and any funds found in the same account within one year of the date of the offense are subject to seizure and forfeiture.

23.     Pursuant to Title 18, United States Code Section 983(a)(1)(A)(ii), the United States commences this federal civil forfeiture action.

24.     On or about March 23, 2015, United States Magistrate Judge for the Eastern District of New York Marilyn D. Go, upon a finding of probable cause, authorized seizure warrants be issued against Subject Accounts ## 1-11 pursuant to Title 18, United

States Code, Sections 981(a)(1)(A), (C), 981(b) and Title 21, United States Code Section 853(f). (See 15 M 0282).

25. On or about April 1, 2015, United States Magistrate Judge for the Eastern District of New York Viktor V. Pohorelsky, upon a finding of probable cause, authorized a seizure warrant be issued against Subject Account # 12 pursuant to Title 18, United States Code, Sections 981(a)(1)(A), (C), 981(b), and Title 21, United States Code Section 853(f). (See 15 M 300).

26. The approximate total amount of funds seized pursuant to the court-authorized seizure warrants is $3,086,604.95. Significantly, the alleged amount of federal health care fraud funds involved in this extensive and elaborate scheme far exceeds the amount seized.

## FACTS

27.     As set forth in further detail below, twenty-three (23) individuals and eight (8) entities, including Eric Vainer and his co-conspirators, many of whom are medical doctors, doctors of osteopathy (DO), podiatrists (DPM), physician assistants (PA) and nurse practitioners (NP) have been charged in New York State criminal court with being involved in an extensive health care fraud scheme. These individuals, using entities and shell-companies they operate, manage and/or control, are involved in an ongoing and lucrative health care fraud scheme that also involves illegal kickbacks and money laundering schemes.

28.     As set forth in the accompanying Indictment, The People of the State of New York v. Vainer, et.al., Supreme Court of New York, County of Kings (Ind # 1337/2015), which was returned by a New York State grand jury sitting in Brooklyn, New York ("Indictment") (a copy of which is attached hereto and incorporated herein by reference as Exhibit A), Eric Vainer, along with twenty-two other individuals (collectively "the Individuals Defendants"), and eight entities (collectively "the Corporate Defendants"), which were operated and/or controlled by one or more of the Individual Defendants, were involved in an extensive and lucrative fraudulent health care conspiracy and money laundering scheme. See Indictment at pp. 1-12.

29.     While the relevant time period as alleged in the Indictment is from on or about October 1, 2012 through on or about September 30, 2014 (hereinafter "the relevant period") (see Indictment at pp. 2, 4, 11 ("The [Vainer Health Care Fraud] Enterprise existed for years, including the period charged in this Indictment."); and Counts 1 through 199), other evidence obtained during this ongoing investigation, including but not limited to

14

subpoenaed bank records and information from HRA and HHS, indicate that the Individual

Defendants and the Corporate Defendants continue to profit from their fraudulent activities

and continue to falsely bill and get paid for unnecessary and frequently expensive medical

procedures, tests and equipment.

      30.    As alleged in the Indictment, defendant Eric Vainer owns and operates

numerous entities that control or are affiliated with multiple medical clinics located within

the Eastern District of New York and elsewhere. These medical clinics fraudulently

submitted claims to Medicaid, Medicaid-managed health care organizations, and Medicare

by recruiting insurance recipients, and then billing and receiving payment for medically

unnecessary visits, tests, procedures and DME. See Indictment at p. 3.

      31.    As further alleged in the Indictment, under the guise of operating

legitimate health care clinics that performed necessary and valuable medical tests and

treatment, the Individual Defendants and Corporate Defendants worked together to process

inflated numbers of patients and falsify medical records for the purpose of fraudulently

billing and then receiving payments from Medicaid, Medicaid-managed health care

organizations, and Medicare for medically unnecessary and frequently costly treatments. See

Indictment at p. 4.

      32.    For example, the Individual Defendants and Corporate Defendants

would recruit "patients" by circulating in low income communities, within the Eastern

District of New York and elsewhere, to lure Medicaid and Medicare clients to corrupt clinics

with the promise of free footwear. Once one of the recruiters was successful in luring a

"patient," the recruiter obtained the patient's insurance card, contacted an employee of one of

the clinics to ascertain whether the card was valid, and, if so, would transport the patient to a

clinic controlled by one of the Individual Defendants and Corporate Defendants. Generally, the recruited patient's initial visit was with a podiatrist who performed a cursory examination. The clinic would then provide the patient with footwear and additional DME, such as an ankle brace or orthotic insole. See Indictment at pp. 4, 11.

33.     Thereafter, the patient was frequently referred for a battery of other medically unnecessary tests and procedures, including vein tests, pain management evaluations, physical therapy, cardiograms, and psychotherapy, with other Individual Defendants and Corporate Defendants. The purpose of performing these tests and procedures was to enable the medical specialist Individual Defendants and Corporate Defendants to bill for their "services." See Indictment at p. 4.

34.     As the leader of this extensive health care fraud, illegal kickbacks, and money laundering scheme, defendant Eric Vainer oversaw the day-to-day and long-term operations of the multiple medical clinics. For example, he would decide who would work at the various clinics, what medical specialties the clinics offered, and what medical tests, procedures and DME would be ordered, dispensed and billed. See Indictment at pp. 7-8.

35.     In furtherance of the scheme, defendant Eric Vainer would sometimes also decide how the medical providers would be compensated. For example, with some medical providers, defendant Eric Vainer agreed to pay a kickback per patient. With other medical providers, he would agree to a "profit split" between the money generated from the fraudulent insurance billings. In any event, to ensure that he was properly compensated according to the agreement in place with each medical provider, defendant Eric Vainer tracked the number of patients seen by the different doctors using a computer system and daily reports from clinic managers. See Indictment at p. 8.

36.     As alleged in the Indictment, some of the medical providers who had these kickback and/or profit split agreements with Eric Vainer were:  Benny Ogorek, DPM, a podiatrist; David M. Glass, M.D., a vascular surgeon; Joseph Grossman, M.D., a cardiologist; Herbert Meadow, M.D., a psychiatrist; and Henry Sardar, D.O., a pain management doctor of osteopathy. Id. at pp. 9-10.

37.     As alleged in the Indictment, the multiple Corporate Defendants directly involved in this health care fraud scheme are each owned, managed and/or controlled by Eric Vainer and/or one of the other Individual co-Defendants.  Specifically, they include but are not limited to the following:  NYC Podiatry, P.C.("NYC Podiatry") which is owned, managed and/or controlled by defendants Eric Vainer and Benny Ogorek; The Center for Surgery (d/b/a New York Vein Center, LLC)("Center for Surgery") which is owned, managed and/or controlled by defendant David M. Glass; T.W. Capital Corp. (d/b/a West 5th Medical Supply)("T.W. Capital") which is owned, managed and/or controlled by defendant Polina Vainer, Eric Vainer's mother; Community Medical Disorder, P.C. ("Community Medical") which is owned, managed and/or controlled by defendant Eric Vainer; Hylan Boulevard Physical Medicine and Rehabilitation, PLLC ("Hylan") which is owned, managed and/or controlled by defendant Henry Sardar; Treating Physician Medical Care, P.C. ("Treating Physician") which is owned, managed and/or controlled by defendant Joseph Grossman; NED Mgmt. Corp.(a/k/a NED Management Corp.)("NED") which is owned, managed and/or controlled by defendant Eric Vainer; and Assist Medical Supplies Corp.("Assist") which is owned, managed and/or controlled by defendant Eric Vainer. See Indictment at pp. 8-11.

38.     As further alleged in the Indictment, to augment the medical billing, defendant Eric Vainer and his mother, defendant Polina Vainer, operated T.W. Capital, which

worked together, hand-in-glove, with the corrupt clinics to defraud Medicaid, Medicaid-

managed health care organizations, and Medicare. See Indictment at pp. 4, 7-8.

39.     As part of this extensive and lucrative health care fraud scheme the

Individual and Corporate defendants operated in concert in committing the following

unlawful actions:  (a) podiatrists who saw patients at the medical clinics fabricated patients'

symptoms and created false diagnoses; (b) these false diagnoses, in turn, justified

prescribing medically unnecessary DME, and vein and/or artery tests for patients without

medical need; (c) cardiologists billed for  medically unnecessary vein and/or artery

ultrasounds performed at clinics; (d) unnecessary pain management services were prescribed

and provided such as office visits, physical therapy, and DME at clinics; (e) psychiatric

services were improperly up-coded and billed at inflated fees for abbreviated patient visits;

(f) patients were referred to other providers for unnecessary and frequently costly tests,

procedures and DME; and (g) a network of recruiters were used to entice individuals covered

by Medicaid or other health insurance plans to become "patients" at the corrupt clinics and

these recruiters would provide these "patients" with transportation to the corrupt clinics. See

Indictment at pp. 8-11.

40.     The egregious cross-pollination among these health care providers is

demonstrated by the billing data that showed the same patient was billed for on the same day

by more than one of the Individual Defendants.  For example, based on an analysis of billing

data obtained during the two-and-one half-year time period between January 1, 2012 and

September 3, 2014 that comprised the investigation's time frame, the number of shared

patient visits that were billed by the vascular surgeon David M. Glass (Center for Surgery),

the podiatrist Ogorek Benny (NYC Podiatry), the DME supplier T.W. Capital (Polina

Vainer), the cardiologist Joseph Grossman (Treating Physician), and the osteopath Henry Sardar (Hylan), was 664, 496, 434, and 179, respectively.

41. As further alleged in the Indictment, and as the flow of fraudulently obtained Medicaid and Medicare funds into and through the Defendants in rem as set forth below indicate, the defendants profited handsomely. Id. at pp. 4, 9-10.

42. As set forth in further detail below, the evidence to date further indicates that some of the Defendants in rem were used or intended to be used: (1) to launder or attempt to launder the millions of dollars generated from this extensive health care fraud scheme, in order to keep the health care fraud scheme operating; (2) augment the unlawful billings to Medicaid and Medicare; (3) hide or conceal the health care fraud proceeds. In addition, some of the Defendants in rem were dissipated in amounts of $10,000 or more, in violation of 18 U.S.C. §§ 1956 and/or 1957.

43. A review of bank and other records indicate that during the relevant period, as a result of the health care and kickback fraud schemes alleged in the Indictment, millions of dollars of Medicare and Medicaid monies were paid to the following Corporate Defendants which were controlled by one or more of the Individual Defendants: NYC Podiatry; Center for Surgery; T.W. Capital; Community Medical; Hylan; and Treating Physician. See ¶¶ 37, 40 above.

44. A review of bank and other records indicate that during the relevant period, bank accounts held in the name of or for the benefit of each of the Corporate Defendants were controlled by one or more of the Individual Defendants.

45. Specifically, bank records regarding the Defendants in rem indicate the following:

19

(a)     Chase Account No. xxx5851 (Subject Account # 1) is held in the name of or for the benefit of NYC Podiatry and the signatories on this account are Eric Vainer and Benny Ogorek.

(b)     Chase Account No. xxx4090 (Subject Account # 2) is held in the name of or for the benefit of David M. Glass, M.D., PLLC The Center for Surgery and the sole signatory on this account is David M. Glass.

(c)     Capital One Account No. xxx1741 (Subject Account # 3) is held in the name of or for the benefit of T.W. Capital and the signatory on this account is Polina Vainer.

(d)     Chase Account No. xxx2563 (Subject Account # 4) is held in the name of or for the benefit of Community Medical and the signatory on this account is currently Herbert Meadow. From when Subject Account # 4 was opened in November 2013 through February 21, 2014, the signatory on this account was Eric Vainer.

(e)     Chase Account No. xxx7156 (Subject Account # 5) is held in the name of or for the benefit of Treating Physician and the signatory on this account is Joseph Grossman.

(f)     Chase Account No. 889805800 was held in the name of or for the benefit of Hylan and the signatory on this now closed account was Henry Sardar. (hereinafter "the now closed Hylan Account"). Upon information and belief, this account was closed on or about December 15, 2014. On or about October 2, 2014, a new account was opened at TD Bank Account No. 4309141200 held in the name of or for the benefit of Hylan. (Subject Account # 6). The signatory on Subject Account # 6 is Henry Sardar.

46.     During the relevant period, a review of bank and other records indicate that the following approximate total amounts of Medicare and Medicaid funds were deposited or caused to be deposited into the above-referenced Subject Accounts as a result of the health care fraud scheme charged in the Indictment:

(a)     $137,673 to Subject Account # 1.

(b)     $2,473,059 to Subject Account # 2.

(c)     $2,225,906 to Subject Account # 3.

(d)     $43,105 to Subject Account # 4.

(e)  $155,327 to Subject Account # 5.; and

(f)  $2,113,631 to the now closed Hylan Account.  On or about October 2, 2014 Subject Account # 6 was opened with at least $250,000 from the now closed Hylan Account and was the account into which Medicare and Medicaid funds were subsequently deposited or caused to be deposited.

47.     Furthermore, a review of bank records indicates that during the relevant period millions of dollars of funds were withdrawn, transferred, or caused to be transferred by check, wire transfer, and/or other means, to or through the following Subject Accounts which, as indicated below, were each also controlled by one or more of the Individual Defendants as part of their illegal health care fraud, kickback, and money laundering schemes.

48.     For example, during the relevant period, approximately $1,357,817 from Subject Account # 2, controlled by David M. Glass, was transferred or caused to be transferred to NED.

49.     Upon information and belief, and as charged in the Indictment, (see Indictment at p. 8, Pattern Acts ## 212-214, Count # 1 at Overt Act ¶ 26, and Counts ## 197-199), NED is an entity owned and/or controlled by Eric Vainer.  See ¶ 37 above.

50.     NED maintains a bank account at Chase bearing Account No. xxx2053 (Subject Account # 7).  The sole signatory on Subject Account # 7 is Eric Vainer.

51.     During the relevant period, in addition to the over $1.3 million transferred from Subject Account # 2 to NED (Subject Account # 7), funds from the following entities were also transferred or cause to be transferred to NED (Subject Account # 7):  NYC Podiatry (Subject Account # 1); Community Medical (Subject Account # 4); Treating Physician (Subject Account # 5); and Hylan (each of which, as set forth in ¶ 46

21

above, fraudulently received Medicare and Medicaid funds). The total amount of such financial transactions or attempted financial transactions was at least $805,521.

52. In addition, a review of bank records also indicates that during the relevant period, hundreds of thousands of dollars from Subject Account # 2 were also transferred or caused to be transferred to two personal bank accounts held in the name of defendant David M. Glass.

53. Specifically, a total of $959,800 in multiple, whole dollar amounts ranging between $5,000 to $85,000, were transferred from Subject Account # 2 to Chase Account No. xxx6749 (Subject Account # 9A). Defendant David M. Glass appears to be the sole signatory on Subject Account # 9A. A review of bank records during the relevant period further indicates that these financial transactions from Subject Account # 2 to Subject Account # 9A were almost exclusively via wire transfer and that at least forty-four of these financial transactions were in amounts of $10,000 or more.

54. Similarly, a total of $240,000 in multiple financial transactions in whole dollar amounts ranging between $5,000 and $60,000 were transferred or caused to be transferred from Subject Account # 2 to Chase Account No. xxx4074 (Subject Account # 9B). Defendant David M. Glass appears to be the sole signatory on Subject Account # 9B. Like Subject Account # 9A, a review of bank records during the relevant period further indicates that the financial transactions from Subject Account # 2 to Subject Account # 9B were almost exclusively by wire transfer and that at least eleven were in amounts of $10,000 or more.

55. A review of bank records for Subject Account # 3 indicates that this T.W. Capital account, which the defendant Polina Vainer appears to be the sole signatory on,

22

was primarily used by Eric Vainer, Polina Vainer, along with others, for their personal benefit and expenses.

56.     For example, during the relevant period, after the over $2.25 million fraudulently acquired Medicare and Medicaid funds were deposited or caused to be deposited into Subject Account # 3, the following financial transactions occurred or were caused to occur from Subject Account # 3:

(a) approximately $293,585 was transferred or caused to be transferred to a personal checking account at Capital One Account No. xxx2953 held in the name of defendant Polina Vainer (Subject Account # 10A). Defendant Polina Vainer appears to be sole signatory on Subject Account # 10A. The majority of these financial transactions from Subject Account # 3 to Subject Account # 10A were in the form of biweekly checks in the amount of approximately $2,774 and at least one financial transaction was in excess of $10,000.

(b) approximately $111,022 was also transferred or caused to be transferred to yet another personal checking account at Capital One Account No. xxx3038 held in the name of defendant Polina Vainer. (Subject Account # 10B). Defendant Polina Vainer appears to be the sole signatory on Subject Account # 10B. The majority of these financial transactions from Subject Account # 3 to Subject Account # 10B were in the form of weekly or biweekly checks in the amount of approximately $1,388. Several of these financial transactions are in whole dollar amounts of approximately $9,850 and were deposited within several weeks of one another.

(c) approximately $173,258 was transferred or caused to be transferred to Assist Medical, which as described in further detail below, is another Defendant Company controlled by defendant Eric Vainer.

(d) approximately $34,005 was also transferred or caused to be transferred to a personal checking account at Capital One Account No. 7014669072 held in the name of or for the benefit of Eric Vainer or Liliya Khaykina (Subject Account # 11). Defendant Eric Vainer is one of the signatories on Subject Account # 11. The majority of these financial transactions from Subject Account # 3 to Subject Account # 11 were in the form of weekly checks made payable to Eric Vainer in the amount of approximately $500; and

(e) an average of approximately $13,000 per month of American Express credit card bills and expenditures were paid all from Subject Account # 3.

57.     As alleged in the Indictment (see Indictment at p. 8), Assist Medical is another DME company, similar to T.W. Capital. Assist Medical is owned and/or controlled by defendant Eric Vainer. A review of bank records indicate that Assist Medical maintained an account at Chase Account No. xxx5654 and Eric Vainer is the primary signatory to this account. A review of bank records indicate that Eric Vainer's wife, Liliya Khaykina, is also listed as Vice President and an additional signatory to this account. (Subject Account # 8).

58.     Commencing in or about November 2012, during the relevant period, Assist Medical (Subject Account # 8) used the same UPS Store drop-box mailing address for at least banking purposes, as did numerous other Eric Vainer controlled entities, including but not limited to NED (Subject Account # 7) and Treating Physician (Subject Account # 5).

59.     Moreover, in addition to being directly funded during the relevant period by T.W. Capital (Subject Account # 3) (see ¶ 56(c) above), Assist Medical also received significant monies from other Eric Vainer controlled Defendant Companies, including approximately $46,600 from NED (Subject Account # 7)(controlled by Eric Vainer); $59,460 from Treating Physician (Subject Account # 5); and $35,600 from defendant Henry Sardar.

60.     Following the over $2.1 million in fraudulent Medicare and Medicaid proceeds being directed or caused to be deposited into the now closed Hylan Account, (see ¶¶ 45(f) and 46(f) above), a review of bank records indicate the following transactions or attempted transactions were made to or through Subject Account #6:  (a) on or about October 2, 2014, $250,000 was withdrawn from the now closed Hylan Account and used to fund the initial opening of Subject Account # 6; (b) on or about October 14, 2014, $100,000 was wire transferred or caused to be wire transferred from the now closed Hylan Account to Subject

Account #6; (c) on or about November 3, 2014 $200,000 was wire transferred or caused to be wire transferred from the now closed Hylan Account to Subject Account # 6; and (d) on or about November 5, 2014 an additional $200,000 was wire transferred or caused to be wire transferred from the now closed Hylan Account to Subject Account # 6.

61.     Furthermore, a review of bank records and other information indicates that Subject Account # 12, a personal bank account held in the name of Henry Sardar/Alice Sardar, was opened on or about September 27, 2012.   Thereafter, during the relevant period, a substantial amount of funds were transferred or caused to be transferred from Subject Account # 6 into Subject Account # 12.  Specifically a total of $900,000 was transferred from Subject Account # 6 (the Hylan Account) to Subject Account # 12 (the Sardar personal account) as follows:  (a) on or about January 26, 2015 approximately $500,000 was wire transferred or caused to be wire transferred; (b) on or about January 27, 2015, approximately $45,000 was wire transferred or caused to be wire transferred; (c) on or about March 26, 2015 approximately $130,000 was wire transferred or caused to be wire transferred; and (d) on or about March 30, 2015,  approximately $225,000 was wire transferred or caused to be wire transferred.

62.     In addition to each of these financial transactions being in whole dollar amounts and in excess of $10,000 each, these financial transactions appear to be an excessive amount of money for a single entity such as Hylan to have earned in less than a three- month period of time and an excessive amount to subsequently transfer or caused to be transferred to a personal account.

63.     A review of bank and other financial records further reveal at least approximately $80,105 was transferred or caused to be transferred from the now closed

Hylan Account, a now closed personal Sardar account held at Chase Bank (hereinafter "the now closed Sardar Account"), Subject Account # 6, and Subject Account # 12 and used to pay for outstanding mortgages for Subject Properties ## 1 and 2, each of which are owned by defendant Sardar.

64.     Furthermore, on or about September 16, 2013, during the relevant period, defendant Sardar purchased Subject Property # 3 and used an additional at least $90,265 from the now closed Hylan Account, now closed Sardar Account, Subject Account # 6 and Subject Account # 12, in order to pay for the outstanding mortgage for Subject Property # 3.

## FIRST CLAIM FOR RELIEF

65.     Plaintiff repeats the allegations of paragraphs 1 through 64 as if fully set forth herein.

66.     The Defendants in rem, and all proceeds traceable thereto, constitute or are derived from proceeds traceable to a violation of a Federal health care fraud offense in violation of 18 U.S.C. § 1347.

67.     Pursuant to 18 U.S.C. § 1956(c)(7)(F), any act or activity constituting a Federal health care fraud offense is defined as a "specified unlawful activity" under 18 U.S.C. § 1956 (c)(7).

68.     As a result of the foregoing, the Defendants in rem and all proceeds traceable thereto, are liable to condemnation and forfeiture to the United States in accordance with 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF

69.     Plaintiff repeats the allegations of paragraphs 1 through 64 as if fully set forth herein.

70.     The Defendants in rem, and all proceeds traceable thereto, were involved in or traceable to transactions in violation of  18 U.S.C. § 1956.

71.     As a result of the foregoing, the Defendant in rem and all proceeds traceable thereto, are liable to condemnation and forfeiture to the United States in accordance with 18 U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR RELIEF

72.     Plaintiff repeats the allegations of paragraphs 1 through 64 as if fully set forth herein.

73.     The Defendants in rem, and all proceeds traceable thereto, were involved in or traceable to transactions in violation of 18 U.S.C. § 1957.

74.     As a result of the foregoing, the Defendants in rem and all proceeds traceable thereto, are liable to condemnation and forfeiture to the United States in accordance with 18 U.S.C. § 981(a)(1)(A).

74.     WHEREFORE, plaintiff, United States of America, requests that a warrant of this Court be issued for the arrest of the Defendants in rem; that notice of these proceedings be given to all interested persons; that the Defendants in rem be forfeited and condemned to the use of the United States of America; that the Plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems just and proper.

Brooklyn, New York
May 18, 2015

> KELLY T. CURRIE
> ACTIN UNITED STATES ATTORNEY
> *Attorney for Plaintiff*
> Eastern District of New York
> 271 Cadman Plaza East
> Brooklyn, New York  11201
>
>
> By:     Claire S. Z
>            Claire S. Kedeshian
>            Assistant United States Attorney
>            (718) 254-6051

28

## **VERIFICATION**

ANGELA JETT hereby declares as follows:

1.     I am a Special Agent with the Federal Bureau of Investigations currently assigned to the Asset Forfeiture squad in New York.

2.     I have read the verified complaint in rem in this action and know the contents thereof.

3.     The matters contained in the within verified complaint in rem are true and accurate to the best of my knowledge, information and belief.

4.     The source of my information and the grounds for my belief are my personal knowledge, information provided by other law enforcement officers, the official files and records of the United States Department of Justice, Kings County District Attorney's Office, and other law enforcement agencies.

I declare under penalty of perjury that the foregoing is true, to the best of my knowledge, information, and belief.

Dated:   Brooklyn, New York
         May 18, 2015

                                    _____
                                    ANGELA JETT,
                                    Special Agent, FBI

29